**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE CERVANTES, et al., ) | Case No.: 1:12-cv-1932 - LJO - JLT |
| ) | |
| Plaintiffs, ) | ORDER GRANTING IN PART PLAINTIFFS' |
| ) | MOTION TO COMPEL FURTHER DISCOVERY |
| v. ) | RESPONSES |
| ) | |
| CEMEX, INC., ) | (Docs. 51, 50, 52) |
| ) | |
| Defendant. ) | |
| ) | |

Jose Cervantes and Jorge Montes ("Plaintiffs") seek to compel Defendant CEMEX, Inc. to provide further discovery responses to several interrogatories and requests for production of documents. (Doc. 50.) The parties filed their Joint Statement regarding the discovery disputes on August 4, 2014. (Doc. 52.) The Court heard the oral arguments of the parties on August 18, 2014. For the following reasons, Plaintiffs' motion is **GRANTED IN PART**.

**I.     Factual and Procedural History**

Plaintiff Jose Cervantes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and California's Department of Fair Employment and Housing ("DFEH") on May 24, 2010, asserting that he was hired as a mixer driver by Defendant in July 2006, and "[t]hereafter was subject to harassment from non-Hispanic employees." (Doc. 27-1 at 2.) Cervantes reported that he "was repeatedly told to speak English," which he complained about to the Human Resources department in March 2010. (*Id.*) Cervantes reported: "[T]he complaint was sent to

1

1  James Hamilton, Human Resources in Modesto, CA.  On or about March 24, 2010, Mr. Hamilton told
2  me that I would be suspended if I spoke Spanish.  Subsequently, Mr. Hamilton sent emails to
3  coworkers to speak English only."  (*Id.*)  He "believe[d] that other employees ha[d] also been treated
4  differently because of their national origin (Hispanic)."  (*Id.*)  Cervantes received a "Right-to-Sue"
5  notice from the DFEH on May 26, 2010.  (Doc. 27 at 6, ¶ 20; Doc. 27-1 at 8.)

6  On August 16, 2010, Plaintiff Jorge Montes filed a Charge of Discrimination with the EEOC
7  and DFEH, also complaining about the "English-Only" policy in place at CEMEX.  (Doc. 27-1 at 13.)
8  Montes reported that he was hired by CEMEX in May 2008, and he "speak[s] limited English."  (*Id.*)
9  According to Montes, he was verbally harassed by Keith Stogdale [sic] in January 2010, and "was
10 subjected to a new policy regarding no Spanish on the radio" in February 2010.  (*Id.*)  Montes reported
11 that he was "told not to speak Spanish and speak English only," and was forced to read in English. (*Id.*)
12 Montes asserted he was harassed and "subjected to different terms and conditions of employment"
13 because he is Hispanic, and "believe[d] that other employees ha[d] also been harassed subjected to an
14 English-Only Rule, and subjected to different terms and conditions of employment because of their
15 national origin (Hispanic)."  (*Id.*)  Montes received a "Right to Sue" notice from the DFEH on August
16 18, 2010.  (Doc. 27 at 6, ¶ 21; Doc. 27-1 at 19.)

17 On April 4, 2012, the EEOC issued determination letters to Cervantes and Montes.  (Doc. 27-1
18 at 21, 27.)  The EEOC representative explained there was evidence supporting a finding that Cervantes,
19 Montes, and similarly situated individuals were "subjected to unwelcomed harassment and different
20 terms and conditions of employment based upon his national origin, Hispanic[,] which was sufficiently
21 severe or pervasive to create a hostile work environment."  (*Id.*)  Plaintiffs received "Right to Sue"
22 letters from the DFEH on November 27, 2012.  (Doc. 27-1 at 36-38.)

23 The next day, on November 28, 2012, Plaintiffs initiated the action now pending before the
24 Court by filing a Complaint against CEMEX.  (Doc. 1.)  Defendant filed its Answer on March 11,
25 2013.  (Doc. 16.)  The Court held a scheduling conference on May 1, 2013, and set the deadlines for the
26 action, including the conclusion of non-expert discovery no later than April 25, 2014, and the filing of
27 non-dispositive motions no later than July 14, 2014.  (Doc. 21.)  Further, the Court informed the parties
28

1  that no written discovery motions were to be filed without the prior approval of the Court.  (Doc. 21 at
2  4-5.)

Plaintiff filed a First Amended Complaint on July 26, 2013.  (Doc. 27.)  Plaintiffs alleged Defendant is liable for discrimination, retaliation, and harassment in violation of Title VII and California's Fair Employment and Housing Act.  (*See* Doc. 27 at 1.)  In addition, Plaintiffs alleged Defendant is liable for an unlawful use of workplace language policy, in violation of Cal. Gov't Code § 12951.  (*Id.*)  Defendant filed its Answer to the amended complaint on August 15, 2013.  (Doc. 29.)

In compliance with the Court's Scheduling Order, the parties notified the Court of a discovery dispute regarding several interrogatories and requests for production served by Plaintiffs.  The Court held a telephonic conference with the parties on July 11, 2014.  (Doc. 48.)   Because the parties were unable to resolve most of the issues presented, the Court issued an order authorizing Plaintiffs "to pursue formal resolution of their dispute according to the procedures set forth in Local Rule 251." (Doc. 49 at 1.)

On July 14, 2014, Plaintiffs filed the motion now pending before the Court.  (Doc. 50.)  Because Plaintiffs failed to comply with the requirements of Local Rule 251, the Court struck all documents filed, and retained only Plaintiffs' Notice of Motion.  (Doc. 51.)  The Court directed the parties to file a joint statement as required by Local Rule 251, which the parties filed on August 4, 2014.  (Doc. 52.)  However, in light of last-minute changes to the Joint Statement by Plaintiff and the unavailability of Defendant's counsel on the date the document was to be filed, the Court granted Defendant permission to file a supplemental brief "addressing the new material included . . . in the joint statement by Plaintiffs." (Doc. 53.)  Defendant filed its brief on August 6, 2014.  (Doc. 54.)

By and through the motion pending before the Court, Plaintiffs seek to compel Defendant to:

1. Respond to Plaintiff's Special Interrogatories Nos. 5, 8, 24, 26, 27, 28, 49;
2. Respond to Plaintiff Montes' Request for Production, Set Four No. 84, 85, 86, 87, 88, 89, 110 and 112 and Produce documents;
3. Respond to Plaintiff Cervantes' Request for Production, Set Two, No 59 and produce documents;

(Doc. 50 at 2.)  In addition, Plaintiffs request that the Court "issue an[] order precluding Defendant from using attorney-client privilege as a basis for defending liability of these discrimination claims in

3

all proceedings in this case." (*Id.*) Defendant objects to each of these requests, but has responded in part to each interrogatory and request for production identified by Plaintiffs.

**II.     Discovery**

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

**A.     Interrogatories**

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)). Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

Any grounds of an objection to an interrogatory must be stated "with specificity." Fed. R. Civ. P. 33(b)(4); *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D. N.Y. 2000) (objection that interrogatories were "burdensome" overruled for failure to "particularize" the basis for objection); *Mitchell v. AMTRAK*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002) (objections must explain how an interrogatory is overbroad or unduly burdensome).

### B. Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, 2009 WL 3303718 (E.D. Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a

production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

### III. Discussion and Analysis

#### A. Special Interrogatory No. 18

In Special Interrogatory No. 18, Plaintiffs requested Defendant "IDENTIFY all employees supervised, monitored or overseen by Keith Stogdell during the period of January 1, 2006 to the present." (Doc. 52 at 22.) Defendant objected to the request as "overbroad" and seeking information that was "neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to discovery of admissible evidence." (*Id.*) Further, Defendants responded:

> Defendant objects to this interrogatory on the grounds that it violates the privacy rights of non-party current and former employees because the request in its definition of "IDENTIFY" purports to seek the disclosure of personal contact information maintained by CEMEX.
>
> Defendant further objects to this interrogatory on the grounds that it seeks information beyond the scope of Plaintiff's First Amended Complaint and the administrative charges each Plaintiff filed with the EEOC in 2010. In particular, Plaintiffs' allegations of discrimination, harassment, and retaliation originated in 2010. Accordingly, the IDENTITY of every employee supervised by Keith Stogdell prior to 2010 is overbroad.

(*Id.*) Without waiving its objections, Defendant identified drivers Keith Stogdell supervised from 2010 to the present. (*Id.*)

Plaintiffs assert, "Through Special Interrogatory No. 18, the Plaintiffs are attempting to obtain contact information of 'all employees supervised, monitored or overseen' by Defendant Cemex Area Manager Keith Stogdell - the supervisor alleged to have harassed, retaliated and discriminated against the Plaintiffs and to have engaged in a pattern and practice of treating other Latino employees the

same." (Doc. 52 at 23.) Plaintiffs argue that "[t]he testimony of other co-workers present during the same relevant time period about their treatment at CEMEX are probative of Keith Stogdell's intent to discriminate and harass Latino employees." (*Id.* at 24, emphasis omitted.)

### 1. Scope of the discovery requests

As an initial matter, Defendant argues the requests are "overbroad" because Plaintiffs seek "information beyond the scope of Plaintiffs' First Amended Complaint and the administrative charges each Plaintiff filed with the EEOC in 2010." (Doc. 52 at 22.) Defendants contend, "Plaintiffs' allegations of discrimination, harassment, and retaliation originated in 2010," and as a result the request for seeking the name and contact information "of every employee supervised by Keith Stogdell prior to 2010 is overbroad." (*Id.*)

However, in the EEOC charge filed by Cervantes, he reported that he was hired as a mixer driver by Defendant in July 2006, and "[t]hereafter was subject to harassment from non-Hispanic employees regarding the English only policy." (Doc. 27-1 at 2.) Cervantes reported also that he witnessed harassment in January 2009. (*Id.*) Montes reported in his EEOC charge that he was hired in 2008, and was "subjected to different terms and conditions of employment because of [his] national origin." (*Id.* at 13.) The first amended complaint mirrors these claims. (Doc. 27 at 4, 5) Thus, Plaintiffs' allegations in the EEOC charge and complaint do not expressly state the discriminatory actions began in 2010. Thus, the requests are not overbroad, and Defendant's objection to the discovery request on the grounds that it is overbroad is **OVERRULED**.

### 2. Privacy of the non-party employees and former employees of CEMEX

Plaintiffs contend they should be permitted to contact individuals who would be identified with Special Interrogatory 18 to ascertain: "(1) whether it is more probable or less probable that drivers, dispatchers, area managers, quality control personnel, mechanics and sales personnel only used the company radio for business purposes or (2) to rebut any information contained in the Plaintiffs' employment file that is alleged to be unlawful (i.e., their discipline) and that Defendant is using to support its affirmative defenses." (Doc. 52 at 26.) On the other hand, Defendant argues Plaintiffs fail to show they are entitled to the information requested under Special Interrogatory No. 18. (*Id.* at 29-

31.) Defendant argues that Plaintiffs' discovery request violates the privacy rights of the current and former CEMEX employees, who are not parties in this action. (*Id.* at 30-31.)

Previously, this Court observed: "Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Megargee v. Wittman*, 2007 WL 2462097, at *2 (E.D. Cal. Aug. 24, 2007) (citing *Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir.1976); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal.1990). District Courts have adopted a balancing test used by California state courts to determine whether disclosure is appropriate, under which the Court must balance the plaintiff's need of the information against the claimed privacy right. *See, e.g., Cook*, 132 F.R.D. at 550-52; *Ragge v. MCA/Universal*, 165 F.R.D. 601, 604-05 (N.D. Cal. 1995); *see also Davis v. Leal,* 43 F.Supp.2d 1102, 1110 (E.D. Cal., 1999) (explaining that the right to privacy is subject to a balancing of the needs of the litigation with the sensitivity of the information and records sought).

In *Pioneer Electronics (USA), Inc. v. Superior Court* 40 Cal.4th 360, 370-371 (2007) and *Hill v. Nat'l Collegiate Athletic Assoc.,* 7 Cal.4th 1, 40 (1994), the California Supreme Court set forth an analytical framework for evaluating claims of invasion of privacy under the California Constitution. First, the employees must have a "legally protected privacy interest." *Hill*, 7 Cal. 4th at 35. Second, the employees must have "a reasonable expectation of privacy" in the information and third, the invasion of privacy must be "serious in nature, scope, and actual or potential impact." *Id.* at 36-37. If each is shown, the Court must then balance the privacy interest against the competing disclosure interest. *Pioneer*, 40 Cal.4th at 370-371.

Though personal identifying information is "entitled to some privacy protection," its disclosure is not a serious invasion of privacy, in contrast to the disclosure of "one's personal medical history or current medical condition nor details regarding one's personal finances or other financial information." *Pioneer*, 40 Cal.4th at 372. However, the fact that employees provide contact information as a condition of employment means that the privacy interests are more significant than in cases where such information is shared voluntarily. *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal.App.4th 554 (Cal.App. 2d Dist. 2007). In *Belaire-West Landscape,* the court observed:

8

> It is most probable that the employees gave their addresses and telephone numbers to their employer with the expectation that it would not be divulged externally except as required to governmental agencies (such as the Internal Revenue Service, the Social Security Administration, etc.) or to benefits providers such as insurance companies. This is a reasonable expectation in light of employers' usual confidentiality customs and practices.

*Id.* On the other hand, the expectation of privacy does not necessarily mean that employees "would wish [contact information] to be withheld from a . . . plaintiff who seeks relief for violations of employment laws." *Id.*; *Puerto v. Superior Court*, 158 Cal.App.4th 1242 (Cal. App. 2d Dist. 2008).

For example, in *Puerto*, the plaintiff alleged wage and hour violations, and sought information including telephone numbers and addresses for percipient witnesses to the claim. *Puerto*, 158 Cal. App.4th at 1245-46. The defendant provided the names of witnesses, but refused to provide contact information, objecting to the disclosure, in part, due to the privacy interests of its employees. The court observed that "a percipient witness's willingness to participate in civil discovery has never been considered relevant—witnesses may be compelled to appear and testify whether they want to or not." *Id.* at 1252. Because the witness' identities were known in the litigation, the court rejected the argument that the disclosure of residential addresses and telephone numbers was a serious invasion of privacy, explaining:

> Nothing could be more ordinary in discovery than finding out the location of identified witnesses so that they may be contacted and additional investigation performed. (*Planned Parenthood*, supra, 83 Cal.App.4th at p. 359 [home addresses and telephone numbers are "routinely produced during discovery"].) As the Supreme Court pointed out in *Pioneer*, the information sought by petitioners here—the location of witnesses—is generally discoverable, and it is neither unduly personal nor overly intrusive. (*Pioneer*, at p. 373.) In some respects, the potential intrusion here is even less significant than that in *Pioneer*, because here the requested disclosure does not involve individuals' identities, which had already been disclosed by Wild Oats prior to the filing of the motion to compel. There simply is no evidence that disclosure of the contact information for these already identified witnesses is a transgression of the witnesses' privacy that is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."

*Id.* at 1252. Moreover, in both *Pioneer* and *Puerto*, the courts determined that employees might wish for their contact information to be disclosed in cases related to wrongful acts by their employer. *See Pioneer*, 40 Cal. at 372; *Puerto*, 158 Cal. App. 4th at 1254.

Here, Plaintiffs argue that "all employees supervised, monitored or overseen by Keith Stogdell during the period of January 1, 2006 to the present" are percipient witnesses. (*See* Doc. 52 at 23-24.)

Plaintiffs assert that individuals supervised by Mr. Stogdell have knowledge of "the work environment as well as the imposition of an English-Only policy on the Company radio." (*Id.* at 26.) In light of the decisions in *Puerto* and *Pioneer*, and the significant potential that admissible evidence will be obtained from these witnesses, the Court finds that Plaintiffs' need for the identities and contact information of individuals outweighs the privacy interests raised by Defendant. Furthermore, the privacy concerns are mitigated by the stipulated protective order entered in this action on August 29, 2013. (Docs. 29, 30). Consequently, Plaintiffs' request for further discovery responses to Special Interrogatory No. 18 is **GRANTED**, and Defendant **SHALL** disclose the names and last known contact information for "all employees supervised, monitored or overseen by Keith Stogdell during the period of January 1, 2006 to the present."

### B.    Cervantes' Request for Production Set Two No. 59

Plaintiffs requested that Defendant produce "[a]n unredacted copy of [Defendant's] list(s) produced in this case as bate stamp numbers 20 DEF001086-1098." (Doc. 52 at 23; *see also* Doc. 52-1 at 27-29.) Defendant objected to the production request "on privacy grounds," arguing that Plaintiffs were "seeking confidential personnel information and private contact information of third parties, including current and former employees with constitutional and common law privacy rights." (*Id.*) In addition, Defendants asserted that Plaintiffs were seeking "information and/or documents neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to discovery of admissible evidence." (*Id.* at 23.)

Here, Plaintiffs make no showing that any of the individuals on the list have information relevant to Plaintiffs' claims. Plaintiffs present no evidence as to who the individuals identified on the list are, or for what purpose the list was prepared. Their argument amounts to an assertion that because the EEOC received this list of names, somehow, this list of names must have import here. This is insufficient. Consequently, the Court is unable to determine whether the evidence sought is relevant or will lead to admissible. Further, Court is unable to evaluate the competing privacy interests of the identified individuals and Plaintiffs' need of their contact information. Plaintiffs' request to compel Defendant to produce the unredacted version of the document identified in Cervantes' Request for Production No. 59 is **DENIED**.

**C.     Objections based upon attorney-client privilege and attorney-work-product doctrine: Special Interrogatories Set Two Nos. 24-28 and Request for Production Set Four No. 112**

Plaintiffs note that "Defendant has claimed attorney client-privilege and work product protections at least to 'some' of its investigation of unlawful employment practices complaints" in its responses to Special Interrogatories Nos. 24-28 and Request for Production No. 112. (Doc. 52 at 35.) Plaintiffs observe Defendant's privilege log "lists several documents as being withheld under Attorney-Client privilege and work product that specifically reference Defendants' [sic] investigation, response, and/or actions regarding Plaintiffs' EEOC charges of discrimination, retaliation, and harassment." (Doc. 52 at 36) (citing Díaz Decl. ¶ 13, Doc. 52-1 at 79-82.)

Plaintiffs observe that under California law, "employers have an affirmative duty to take reasonable steps to prevent harassment or discrimination from occurring," which requires an employer to "respond promptly *and* properly to allegations of harassment or discrimination that are known to it." (Doc. 52 at 36) (citing Cal. Gov't Code §12940(k); *Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 286 (1998)). Further, Plaintiffs note: "One way a plaintiff can establish employer liability for harassment or discrimination is to show that the employer breached [its] statutory duty" to investigate. (*Id.*) (citing *Northrop Grumman Corp. v. Workers' Comp. Appeals Board*, 103 Cal. App. 4th 1021, 1035; *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 605 (1989); *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995)). According to Plaintiffs, because this action "involves failure to prevent discrimination and retaliation claims," "any actions taken to prevent discrimination and retaliation including attorney-client communications are directly at issue and are waived if they are to be used as part of any defense." (Doc. 52 at 37-38.) Plaintiffs conclude that "Defendant cannot claim attorney client-privilege to any facts supporting any of its affirmative defense[s]." (*Id.* at 38.)

On the other hand, Defendant asserts CEMEX "should not be compelled to produce attorney-client privileged communications or work product because Defendant has not invoked privilege as a defense and already has agreed not to rely on the privileged materials at issue in support of its defenses." (Doc. 52 at 39, emphasis omitted.) Further, Defendant argues that its "responses to the discovery requests do not place any privileged communication at issue." (*Id.* at 41.)

Review of Defendant's responses to the discovery reveals that CEMEX is not using its attorney-client communications as part of a defense to Plaintiffs' retaliation claims and does not intend to. (Doc. 52 at 43["Defendant will stipulate to not using documents listed in its privilege log."]) Indeed, because the lawsuit was filed one day after the right-to-sue letter was issued, it does not appear that other than defending this litigation, no other investigation occurred.[1] Consequently, Plaintiffs' request to compel documents identified in Defendant's privilege log in response to Special Interrogatories (Set Two) Nos. 24-28 and Request for Production Set Four, No. 112 is **DENIED**.

### D. Disciplinary Actions: Special Interrogatory No. 8 and Requests for Production Set Four, Nos. 83-89

In Special Interrogatory No. 8, Plaintiff requested that Defendant identify "all individuals at [its] Delano location/plant that were disciplined, warned, and/or counseled for failure to properly document on a daily trip report any rest breaks or lunch breaks for the period of January 1, 2006 to the present." (Doc. 52 at 43.) In addition, through Requests for Production Nos. 83-89, Plaintiffs sought "[a]ny and all disciplinary actions, warnings, or write ups given by Keith Stogdell to anyone" from January 1, 2006 to the present for an accident/and or property damage, punching in and/or clocking in too early or late, cell phone use, and failure to wear protective equipment. (*Id.* at 43-47.) Defendant objected to each of these requests as overbroad, burdensome and oppressive. (*Id.*) In addition, Defendant objected that Plaintiffs were "seek[ing] confidential personnel information of third parties, including current and former employees with constitutional and common law privacy rights." (*Id.*)

#### 1. Scope of the discovery requests

Again, Defendant argues the discovery requests are "overbroad" because Plaintiffs seek "information beyond the scope of Plaintiffs' First Amended Complaint and Plaintiffs' administrative charges filed with the [EEOC]." (Doc. 52 at 44-47.) According to Defendant, "Plaintiffs' allegations of discrimination, harassment, and retaliation originated in 2010," and as such the requests are overbroad

---

[1] At the hearing, Plaintiffs' counsel argued that they should be allowed to know what communications were exchanged between defense counsel and their client because this information could be helpful to Plaintiffs in proving their case. If this mere showing was deemed sufficient, the privilege would be completely eviscerated and clients would no longer be permitted to seek advice of counsel in confidence. Clearly, *in every case* in which a party seeks to invade the privilege, the opponent thinks there is evidence contained within the communication which would be helpful to his case.

because Plaintiffs "seek[] information and/or documents neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to discovery of admissible evidence." (*Id.*)

However, as discussed above, Cervantes reported that he was hired as a mixer driver by Defendant in July 2006, and "[t]hereafter was subject to harassment from non-Hispanic employees regarding the English only policy." (Doc. 27-1 at 2.) Montes reported in his EEOC charge that he was hired in 2008, and was "subjected to different terms and conditions of employment because of [his] national origin." (*Id.* at 13.) Further, in the complaint, Plaintiffs assert they were reprimanded and suspended "for offenses for which non-Latinos are not reprimanded nor suspended." (Doc. 27 at 4.) Thus, the disciplinary actions are relevant to Plaintiffs' claims. Further, Plaintiffs allege they were treated differently than their non-Hispanic coworkers after being hired in 2006 and 2008. The EEOC charges do not expressly limit the allegations to 2010 as Defendant asserts. Thus, the requests are not overbroad in scope, and Defendant's objections to the discovery requests, on these grounds, are **OVERRULED**.

### 2. Burden upon Defendant

Defendant asserts that Plaintiffs' requests are "burdensome and oppressive" because a response "requires Defendant to search through numerous employees' personnel records over an 8-year period." (*See* Doc. 52 at 44.) Defendant does not identify how many individuals the company has employed since 2006 at the Delano location but asserts that Plaintiffs' discovery "requests seek information pertaining to more than 30 individuals who worked at different plants." (*Id.* at 54.) Notably, Defendant reviewed the personnel records from 2010 to the present and provided the responsive documents. (*See id.* at 44.) Defendant fails to explain how review of records dated 2006 to 2010 would be unduly "burdensome and oppressive." For example, Defendant has not explained whether the personnel records are in paper or electronic format, the number of pages of documents that must be reviewed, or even estimated the time required for the record review. The Court will not "manufacture arguments" on behalf of Defendant. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Because Defendant fails to carry the "burden of clarifying, explaining, and supporting its objections," to the discovery requests as "burdensome and oppressive," the objections, on these grounds, are **OVERRULED**.

### 3. Privacy rights of the non-party employees

In general, federal courts recognize an individual's interest in preserving the confidentiality of information contained within a personnel file. *Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 517 (E.D. Cal. 2009). To the extent that the records sought invade the privacy rights of the individuals who are not parties to this action, the Court finds that the stipulated protective order issued on August 29, 2013 (Docs. 29, 30), is sufficient to address the confidentiality of the records. *See* Fed. R. Civ.P. 26(c)(1). Indeed, Defendant produced the records from 2010 to the present "under a 'Confidential' designation, pursuant to the existing protective order." (Doc. 59 at 47.) Accordingly, Defendant's objections to the discovery requests, on these grounds, are **OVERRULED**.

### E. Pay records: Special Interrogatory No. 49

Through Special Interrogatory No. 49, Plaintiffs seek comparator evidence related to the pay rates and work hours of their coworkers. Specifically, Plaintiffs requested that Defendant provide "the hourly rate of pay and/or compensation for any non-Latino driver supervised, monitored or overseen by Keith Stogdell at the time of hire and list all subsequent rate increases with corresponding dates for the period of January 1, 2006 until the present." (Doc. 52 at 43-44.) Defendant responded as follows:

> Defendant objects to this interrogatory on the grounds that it is overbroad and seeks information and/or documents neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to discovery of admissible evidence.
>
> Defendant objects to this interrogatory on privacy grounds in that it seeks confidential personnel information of third parties, including current and former employees with constitutional and common law privacy rights.
>
> Defendant further objects to this interrogatory on the grounds that it is burdensome and oppressive in that it requires Defendant to search through numerous employees' personnel and pay records over an eight year period.
>
> Defendant objects to this interrogatory on the grounds that it seeks information beyond the scope Plaintiffs' First Amended Complaint. In particular, Plaintiffs' allegations of discrimination, harassment, and retaliation originated in 2010. Accordingly, the request for information related to the pay rates of each and every Non-Latino driver supervised by Keith Stogdell dating back to 2006 is overbroad.
>
> Defendant objects to this interrogatory on the grounds that it is duplicative of Interrogatories 19, 20, 21, and 22.[2]

---

[2] The parties have not provided Special Interrogatories Nos. 19, 20, 21, or 22. Thus, the Court is unable to determine whether this interrogatory is duplicative. Further, Defendant does not support its assertion that the interrogatory is "burdensome and oppressive" in the opposition to Plaintiffs' motion to compel. Accordingly, these objections are deemed **WAIVED**.

14

(Doc. 52 at 43.)

As discussed above, Defendant asserts Plaintiffs are only entitled to discovery from 2010 to the present based upon the allegations presented in the EEOC charges. (*Id.* at 51-52.) However, Plaintiffs allege in the EEOC charges and the First Amended Complaint that they were subject to differences in the terms and conditions of Plaintiffs' employment in comparison to non-Hispanic coworkers. Further, as Defendant acknowledges, Montes testified that he believed wages were paid in a discriminatory manner, because his starting pay differed from that of a non-Hispanic coworker. (Doc. 52 at 52-53.) Based upon the allegations and Montes' testimony, the Court finds the scope of discovery from 2006 to present to be reasonable and relevant to Plaintiffs' claims of discrimination. Further, the stipulated protective order dated August 29, 2013 (Docs. 29, 30), is sufficient to address the privacy concerns related to the confidentiality of employee pay records. Accordingly, Defendant's objections are **OVERRULED**, and Plaintiffs' request to compel further discovery responses to Special Interrogatory No. 49 is **GRANTED**.

**F.     Work hours: Montes' Request for Production Set Four, No. 110**

Plaintiffs requested that Defendant produce: "Any and all records and/or documents of regular and overtime work hours for all employees under the supervision of Keith Stogdell in the period of January 1, 2006 to December 31, 2013." (Doc. 52 at 48.) Defendant objected to the request as overbroad, seeking information that is "neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to discovery of admissible evidence," and "beyond the scope of Plaintiffs' First Amended Complaint." (Doc. 52 at 48.)

As Defendant observes, "Plaintiffs have not alleged violations of federal and/or state wage and hour laws." (Doc. 52 at 48.) At first blush, it appears that this information would be probative of Defendant's race-based animus. However, careful review of the first amended complaint demonstrates that this topic was not fairly set forth such that discovery on this topic should be allowed. Though the complaint alleges,

> Defendant CEMEX has a pattern and practice of treating employees of Mexican descent, or Latinos, differently than non-Latinos, and subjecting them to disparate treatment in the terms and conditions of their employment including discipline and pay

(Doc. 27 at 3), it also alleges, "Defendant's discriminatory, harassing and retaliatory actions **include**[3]: [¶¶] Paying Non-Latinos more who have less experience in comparable positions." *Id*. at 4.  Missing from this allegation is the phrase which expands the possible acts of discrimination to those not listed: "but are not limited to . . .".  Thus, Plaintiff's complaint specifically limits their losses related to their wages to their inferior rates of pay, and it does not suggest that the number of hours of work they were assigned was unlawfully determined.

Consequently, Defendant's objections that the information is beyond the scope of Plaintiffs' first amended complaint and not relevant to Plaintiffs' claims are **SUSTAINED**.  Plaintiffs' request to compel documents responsive to Request for Production Set Four No. 110 is **DENIED**.

### G. Supplemental Responses to Amended Special Interrogatories Nos. 3 and 5

During the telephonic conference with the Court on July 11, 2014, Plaintiffs agreed to narrow Special Interrogatory No. 3.  (Doc. 49 at 2.)  §In the Joint Report, Plaintiffs asserted Defendant had yet to provide a response to the amended interrogatories.  (Doc. 52 at 61.)  Defendant reported on August 6, 2014, that it "produced supplemental responses to Special Interrogatories Nos. 3 and 5 on August 5."  (Doc. 52 at 5.)  Defendant's counsel explained that she "was unable to provide verified supplemental responses sooner because its client was unavailable due to pre-planned vacation and business travel."  (*Id.*)  At the hearing on August 18, 2014, Plaintiffs confirmed they received supplement responses to Special Interrogatories Nos. 3 and 5, and as such the request for further discovery is **MOOT**.

### H. Montes' Request for Production Set Three, No. 59

Plaintiffs requested Defendant produce: "Any and all documents evidencing any communications to anyone regarding the use of English-Only on [its] company radio in any location in California during the period of January 1, 2009 to the present."  (Doc. 52 at 57-58.)  Defendant provided a supplemental response but limited its denial of responsive document to the managerial staff in the Delano region except for "documents already produced in this litigation."  (Doc.52 at 58) Though Plaintiffs argue that the requested documents "Are clearly within the scope of Fed. R. Civ. P 26(b)" (*Id.* a 60), counsel admitted at the hearing that, given the sheer number of people employed by Cemex, the

---

[3] Missing from this allegation is the expansive phrase "but are not limited to . . ."

request is overbroad because to fully respond, Defendant would have to investigate communications by everyone in the company. Though counsel argued at the hearing that Defendant's inquiry of this managerial staff in the Bakersfield region was a reasonable response, Defendant should also have to make a similar inquiry at the other regions in the company.

The Court agrees that the request is overbroad for the reasons stated by Defendant and the objection is **SUSTAINED**. Had the discovery request been limited to managerial staff in certain positions with Cemex, the result may have been different. However, the Court must evaluate the motion based upon the discovery request as it was propounded and not based on how it *could* have been propounded. Thus, the motion in this regard is **DENIED**.

### IV.     Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion to compel further discovery responses is **GRANTED IN PART** as follows:

1. Plaintiffs' requests to compel Defendant to respond to Plaintiff's Special Interrogatories Nos. 8 and 49 are **GRANTED**;
2. Plaintiffs' motions to compel Defendant to respond to Plaintiffs' Special Interrogatories Nos. 24, 25, 26, 27, and 28 are **DENIED**;
3. Plaintiffs motion to compel a further response to Montes' Request for Production, Set Three No. 59 is **GRANTED**
4. Plaintiffs' requests to compel Defendant to produce documents responsive to Montes' Request for Production, Set Four Nos. 83, 84, 85, 86, 87, and 88 are **GRANTED**;
5. Plaintiffs' requests to compel Defendant to produce documents responsive to Montes' Request for Production, Set Four Nos. 110 and 112 are **DENIED**
6. Plaintiffs' motion to compel a further response to Montes' Request for Production, Set Three No. 59 is **GRANTED**
7. Plaintiffs' motion to compel Defendant to respond to Cervantes' Request for Production Set Two, No. 59 is **DENIED**;
8. Plaintiffs' requests to compel further responses to Amended Special Interrogatories Nos. 3 and 5 are **DENIED AS MOOT**; and

9. Defendant **SHALL** provide the information and documents identified above no later than **August 25, 2014**.

IT IS SO ORDERED.

Dated: **August 18, 2014**         /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE