1

2

3

4

5                        **UNITED STATES DISTRICT COURT**

6                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8    JOSE CERVANTES and JORGE MONTES,              1:12-CV-01932-LJO-JLT

9                        Plaintiffs,              **ORDER ON MOTION FOR**
                                                  **JUDGMENT ON THE PLEADINGS**
10        v.                                      **AND MOTION FOR SUMMARY**
                                                  **JUDGMENT**
11   CEMEX, INC., and and DOES 1 – 50,            (Docs. 57, 67)

12                       Defendants.

13

14

15                              **INTRODUCTION**

16        Plaintiffs Jose Cervantes and Jorge Montes (collectively, "Plaintiffs") bring this action for

17   discrimination and harassment in violation of 42 U.S.C. § 2000(e), *et seq.* ("Title VII") and

18   California's Fair Employment and Housing Act, Cal. Gov. Code § 12940, *et seq.*, ("FEHA") as well as

19   for failure to prevent discrimination and retaliation in violation of FEHA § 12940(k) and unlawful

20   workplace language policy in violation of FEHA § 12951 against Defendant Cemex, Inc. ("Cemex").

21   Before the Court are Plaintiffs' motion for judgment on the pleadings and request to strike as to

22   Cemex's affirmative defenses and Defendant Cemex's motion for summary judgment of Plaintiffs

23   Cervantes and Montes' complaint.  For the reasons discussed below, the Court GRANTS in part

24   Plaintiffs' request to strike Cemex's affirmative defenses, DENIES in part Plaintiffs' motion for

25   judgment on the pleadings, GRANTS in part Cemex's motion for summary adjudication as to

26   Plaintiffs' claims, and DECLINES to exercise supplemental jurisdiction over and DISMISSES without

27   prejudice the remaining state law claims.

28

                                         1

**BACKGROUND**

A.   **Facts Alleged in First Amended Complaint**

Plaintiffs are both of Hispanic descent and were employed by Cemex.  Cervantes speaks English and Spanish.  Montes speaks Spanish and limited English.

Cervantes began employment at Cemex on or around July 6, 2006 as a mixer driver.  Cervantes alleges that he was told by Cemex to speak only English at work, including on the company radio, and that he was disciplined for speaking Spanish in violation of Cemex's policy.  In or around March 2010, Cervantes alleged that he was told by Cemex Human Resources Manager James Hamilton ("Hamilton") that Cervantes would be suspended if he continued to speak Spanish at work.  Plant Manager Alan Light ("Light") witnessed Hamilton's statement to Cervantes.  Cervantes also alleges that he was forced to sign a letter stating that he would be terminated for further incidents.[1]  On or about October 11, 2012, Light suspended Cervantes for not completing a post-trip inspection of his vehicle.  Cervantes alleges that non-Latino drivers have not been suspended for failing to complete post trip inspections.

Montes began employment at Cemex on or around May 2008 as a mixer driver.  In or about 2010, Montes was told that he could only speak English at work as part of a new policy at Cemex.  Montes alleges that, in or about 2010, Cemex Area Manager Keith Stogdell ("Stogdell") forced Montes to read English out loud at meetings, telling his co-workers not to help him, and laughing at him because of his difficulty in pronouncing English words.  On November 27, 2012, Light suspended Montes for failing to report a problem with a tire in his vehicle.  Montes alleges that he in fact reported the tire problem to the mechanic who is responsible for fixing it.

Cervantes and Montes each filed charges of national origin discrimination and harassment with the Equal Employment Opportunity Commission ("EEOC").  On or around April 4, 2012, the EEOC issued a letters of determination to Cervantes and to Montes.  Each letter stated that the EEOC's investigation supports a finding that there is reasonable cause to believe the charging party was

---

[1] However, Plaintiffs offer no evidence to support this allegation and do not mention it in any of their arguments opposing summary judgment.

subjected to unwelcome harassment and different terms and conditions of employment based on his national origin.  On or around August 31, 2012, the EEOC issued to Plaintiffs notice of right to sue following conciliation failure and the EEOC's decision not to bring suit based on Plaintiffs' charges.

**B.    Procedural History**

On or about May 24, 2010, Cervantes filed a charge of discrimination alleging national origin discrimination against Cemex with the EEOC, and the charge was filed simultaneously with California's Department of Fair Employment and Housing ("DFEH").  Cervantes received right-to-sue letters from the DFEH on or about May 26, 2010 and from the EEOC on or about August 31, 2012.

On or about August 16, 2010, Montes filed a charge alleging national origin discrimination against Cemex with the EEOC that was also filed simultaneously with the DFEH.  Montes received right-to-sue letters from the DFEH on or about August 18, 2010 and from the EEOC on or about August 31, 2012.

On or about November 27, 2012, Cervantes and Montes each filed a charge of discrimination and retaliation with the DFEH.  Cervantes and Montes each received a right-to-sue letter from the DFEH dated November 27, 2012.

Plaintiffs brought this action in this Court on November 28, 2012.  (Doc. 2).  Plaintiffs filed the operative first amended complaint ("complaint") on July 26, 2013.  (Doc. 27).  Cemex filed an answer on August 15, 2013.  (Doc. 28).

Plaintiffs filed the instant motion for judgment on the pleadings and request to strike on August 18, 2014.  Cemex filed an opposition on September 16, 2014.  (Doc. 69).  Plaintiffs filed a reply on September 23, 2014.  (Doc. 75).

Cemex filed the instant motion for summary judgment as to Plaintiffs' complaint on August 18, 2014.  (Doc. 57).  Plaintiffs filed an opposition on October 3, 2014.  (Doc. 79).  Cemex filed a reply on October 24, 2014.  (Doc. 97).

**DISCUSSION**

**Motion for Judgment on the Pleadings**

**A.    Legal Standard**

"A district court will render a 'judgment on the pleadings when the moving party clearly

establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996); *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995)).  "All allegations of fact by the party opposing the motion are accepted as true." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (quoting *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)).  Uncontested allegations to which the other party had an opportunity to respond are taken as true.  *Flora v. Home Fed'l Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982).  "Generally, district courts have been unwilling to grant a Rule 12(c) dismissal 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Doleman*, 727 F.2d at 1482 (quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)).

**B.      Analysis**

Plaintiffs seek judgment on the pleadings as to eleven of the affirmative defenses Cemex asserts in its answer and requests this Court to strike each such defense as insufficient.[2]

**1.        Third Affirmative Defense**

In its third affirmative defense, Cemex asserts that "Defendant's conduct about which Plaintiffs complain was a fair and reasonable exercise of managerial discretion undertaken for a fair and honest reason and regulated by good faith under the circumstances."  (Doc. 28 p. 11).  Cemex also denies virtually every material allegation of fact in Plaintiffs' complaint upon which Plaintiffs base their claims.  *See generally*, Doc. 28.  Further, Cemex alleges that it had a non-discriminatory reason for suspending each Plaintiff.  (Doc. 28 ¶¶15, 19).  Therefore, accepting as true every allegation of fact by Cemex, Plaintiffs have not "clearly establishe[d] that no material issue of fact remains to be resolved and that [they] is entitled to judgment as a matter of law."  *Doleman*, 727 F.2d at 1482 (internal quotation and citation omitted).

Plaintiffs argue that, because this is not a true affirmative defense, it is improper as a matter of

_____

[2] Plaintiffs originally sought judgment on the pleadings as to Defendants' first affirmative defense as well, but withdrew that issue in their reply.  (Docs. 67, 75).

law and asks this Court to strike the defense.  "Affirmative defenses plead matters extraneous to the plaintiff's *prima facie* case, which deny plaintiff's right to recover, even if the allegations of the complaint are true."  *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing *Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980)).  "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."  *Zivkovic v. S. California Edison Co*., 302 F.3d 1080, 1088 (9th Cir. 2002)(citing *Flav–O–Rich v. Rawson Food Service, Inc*., 846 F.2d 1343, 1349 (11th Cir. 1988)).  As discussed further in the summary judgment analysis of Plaintiffs' claims, *infra*, a *prima facie* case in claims for hostile work environment, disparate treatment, retaliation, and failure to prevent discrimination do not involve evidence as to the employer's fair exercise of managerial discretion.

Further, even if a defense raised in the answer is improperly labeled as an affirmative defense, the Court need not strike it.  Under Rule 12(f), a court may in its discretion "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are not favored and 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'"  *In re New Century*, 588 F. Supp. 2d 1206, 1220 (C.D. Cal. 2008) (quoting *Colaprico v. Sun Microsystems, Inc*., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991)).  Unless the defenses seeking to be stricken are shown to be such, or to be insufficiently pled under Fed. R. Civ. P. 8, the Court will simply consider them not as affirmative defenses, but as general denials or objections.  *See*, *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig*., No. 08-MD-1919 MJP, 2011 WL 1158387, at *2 (W.D. Wash. Mar. 25, 2011).

Accordingly, Plaintiffs' motion for judgment on the pleadings and request to strike as to Defendants' third affirmative defense is DENIED.

### 2.   Sixth Affirmative Defense

In its sixth affirmative defense, Cemex asserts that "Defendant would have made the same employment decisions concerning Plaintiffs absent any discriminatory or retaliatory motive."  (Doc. 28 p. 11).  As discussed above, Cemex denies virtually all material allegations of fact in Plaintiffs' amended complaint, and further asserts that it suspended each plaintiff for non-discriminatory reasons.

1  (Doc. 28).  Therefore, accepting all of Cemex's factual allegations as true, Plaintiffs fail to clearly

2  establish that there are no material issues of fact and that they are entitled to judgment as a matter of

3  law.  *Doleman*, 727 F.2d at 1482.

4        Plaintiffs further fail to show the Cemex's defense of no discriminatory or retaliatory motive

5  "could have no possible bearing on the subject matter of the litigation," or that it fails to meet Rule 8's

6  notice pleading requirements.  *In re New Century*, 588 F. Supp. 2d at 1220 (internal quotation and

7  citation omitted); Fed. R. Civ. P. 8.

8        Accordingly, Plaintiffs' motion for judgment on the pleadings and request to strike as to

9  Defendants' sixth affirmative defense is DENIED.

10                    **3.        Seventh Affirmative Defense**

11        In its seventh affirmative defense, Cemex asserts that "Defendant's actions about which

12  Plaintiffs complain were justified by legitimate non-discriminatory reasons and were not taken under

13  pretext."  (Doc. 28 pp. 11-12).  Cemex denies virtually all material allegations of fact in Plaintiffs'

14  amended complaint, and further asserts that it took disciplinary action against each plaintiff for non-

15  discriminatory reasons.  (Doc. 28).  Specifically, Cemex alleges that it suspended Cervantes for the

16  non-discriminatory reason that Cervantes failed to perform a post-trip inspection of his vehicle, and

17  that it suspected Montes for the non-discriminatory reason that Montes failed to report a problem with

18  his vehicle.  (Doc. 28 ¶¶ 15, 19).  Therefore, accepting all of Cemex's factual allegations as true,

19  Plaintiffs fail to clearly establish that there are no material issues of fact and that they are entitled to

20  judgment as a matter of law.  *Doleman*, 727 F.2d at 1482.

21        Further, as discussed *infra*, evidence of non-discriminatory reasons for employment decisions

22  and pretext is not a part of a *prima facie* case in any of Plaintiffs' claims.  Rather, such evidence would

23  be part of Cemex's rebuttal of Plaintiffs' *prima facie* case.

24        Plaintiffs also fail to show the Cemex's defense of legitimate non-discriminatory reasons for

25  employment decisions and no pretext is irrelevant to the subject matter of this litigation or

26  insufficiently pled.  *In re New Century*, 588 F. Supp. 2d at 1220; Fed. R. Civ. P. 8.

27        Accordingly, Plaintiffs' motion for judgment on the pleadings and request to strike as to

28  Defendants' seventh affirmative defense is DENIED.

1

2                    **4.        Eighth Affirmative Defense**

3          In its eighth affirmative defense, Cemex alleges "on information and belief that Plaintiffs failed

4    to make reasonable efforts to mitigate their damages, if any."  (Doc. 28 p. 12).  However, Cemex

5    provides no factual support for this defense and no guidance as to the basis for the defense.  "'The key

6    to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice

7    of the defense.'"  *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting

8    *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)).  Although Cemex's pleading need not

9    be supported by detailed factual allegations, it must at least give notice of the "grounds upon which it

10   rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[3]  Here, Cemex's answer gives Plaintiffs no notice as

11   to the grounds upon which is rests its failure to mitigate defense.

12         While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to

13   sufficiently plead its failure to mitigate defense.  *Doleman*, 727 F.2d at 1482; Fed. R. Civ. P. 8, 12(f).

14   Accordingly, the Court STRIKES Cemex's eighth affirmative defense.

15                   **5.        Ninth Affirmative Defense**

16         In its ninth affirmative defense, Cemex asserts that "some of the damages alleged herein are

17   barred by the exclusive remedial provisions of California's Workers' Compensation statute, California

18   Labor Code Section 3600, et seq."  (Doc. 28 p. 12).  However, Cemex's answer provides no notice to

19   Plaintiffs as to which damages are allegedly precluded and the grounds for their preclusion.  *Conley*,

20   355 U.S. at 47.

21         While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to

22   sufficiently plead its Cal. Lab. Code damages preclusion defense.  *Doleman*, 727 F.2d at 1482; Fed. R.

23   Civ. P. 8, 12(f).  Accordingly, the Court STRIKES Cemex's ninth affirmative defense.

24                   **6.        Tenth Affirmative Defense**

25         In its tenth affirmative defense, Cemex asserts that "Plaintiffs' First Amended Complaint fails

26   ─────────────────

27   [3] While *Conley*'s "fair notice" holding as it applies to pleadings under Fed. R. Civ. P. 8 has been abrogated by *Bell Atl.
     Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Ninth Circuit has not extended it to

28   affirmative defenses.  *See*, *Simmons*, 609 F.3d at 1023.  Rather, the Ninth Circuit has continued to apply the "far notice"
     standard to affirmative defenses even after *Twombly* and *Iqbal*.  *Id*.  This Court follows that Ninth Circuit's guidance.

to allege facts upon which an award of punitive or exemplary damages may be granted." (Doc. 28 p. 12). While this defense does not implicate an issue of material fact, Plaintiffs nonetheless fail to show that they are entitled to judgment as a matter of law. Plaintiffs merely argue that Cemex's defense is improperly characterized as an affirmative defense and therefore is legally insufficient. (Doc. 67 p. 8). As discussed above, such reasoning fails as a basis for striking a defense from a pleading, as this Court will simply consider the defense as a general denial or objection. *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig*., 2011 WL 1158387 at *2.

Accordingly, Plaintiffs' motion for judgment on the pleadings and request to strike as to Defendants' tenth affirmative defense is DENIED.

### 7.        Eleventh Affirmative Defense

In its eleventh affirmative defense, Cemex "alleges that Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of waiver and/or estoppel." (Doc. 28 p. 12). However, Cemex's defense in its answer provides no notice to Plaintiffs as to which claims are allegedly subject to waiver or estoppel or the grounds upon which Cemex contends that such claims are waived or estopped. *Conley*, 355 U.S. at 47.

While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to sufficiently plead its waiver and/or estoppel defense. *Doleman*, 727 F.2d at 1482; Fed. R. Civ. P. 12(f). Accordingly, the Court STRIKES Cemex's eleventh affirmative defense.

### 8.        Fourteenth Affirmative Defense

In its fourteenth affirmative defense, Cemex "alleges that any and all causes of action may be barred by after-acquired evidence and/or any damages Plaintiff may have should be reduced as a result of such after-acquired evidence." (Doc. 28 p. 13). "The 'after-acquired evidence' doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later 'discovers' evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct." *Rivera v. NIBCO*, Inc., 364 F.3d 1057, 1070-71 (9th Cir. 2004) (citing *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 352, 360–63 (1995)). However, as Plaintiffs point out, Cemex's defense provides no notice to Plaintiffs as to what alleged wrongdoing by either Plaintiff Cemex discovered or why such wrongdoing precludes or limits Plaintiffs from receiving remedies

1    here.  *Conley*, 355 U.S. at 47.

2           While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to

3    sufficiently plead its after-discovered evidence doctrine defense.  *Doleman*, 727 F.2d at 1482; Fed. R.

4    Civ. P. 8, 12(f).  Accordingly, the Court STRIKES Cemex's fourteenth affirmative defense.

5                          **9.        Fifteenth Affirmative Defense**

6           In its fifteenth affirmative defense, Cemex "alleges that Plaintiffs' alleged damages, if any, are

7    limited by statute."  (Doc. 28 p. 13).  Again, Cemex's defense in its answer provides no notice to

8    Plaintiffs as to which damages are allegedly limited by statute, what the applicable statute is, or why

9    such damages are limited by the applicable statute.  *Conley*, 355 U.S. at 47.

10          While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to

11   sufficiently plead its statutory limitation of damages defense.  *Doleman*, 727 F.2d at 1482; Fed. R. Civ.

12   P. 8, 12(f).  Accordingly, the Court STRIKES Cemex's fifteenth affirmative defense.

13                         **10.       Sixteenth Affirmative Defense**

14          In its sixteenth affirmative defense, Cemex "alleges that because Plaintiffs' First Amended

15   Complaint is vague, ambiguous and written in conclusory terms, Defendant cannot fully anticipate all

16   defenses that may be applicable to this action.  Accordingly, Defendant reserves the right to assert

17   additional defenses if Defendant becomes aware of the existence of such defenses during the course of

18   discovery."  (Doc. 28 p. 13).

19          The Ninth Circuit has held that, "[a]lthough Rule 8 requires affirmative defenses to be included

20   in responsive pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a

21   defendant to plead an affirmative defense in a subsequent motion."  *Simmons*, 609 F.3d at 1023 (citing

22   *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir.1997); *Rivera v. Anaya*, 726 F.2d 564, 566

23   (9th Cir.1984); *Healy Tibbitts Construction Co. v. Ins. Co. of N.A.*, 679 F.2d 803 (9th Cir.1982)); *see

24   also*, *Panaro v. City of North Las Vegas*, 432 F.3d 949, 951 (9th Cir.2006) (holding the district court

25   did not err in permitting defendants to raise a new defense of exhaustion of administrative remedies at

26   the summary judgment stage because the affirmative defense was not available until the summary

27   judgment sage).

28          Cemex's ability to raise additional affirmative defenses at a later time is a matter within the

                                                    9

1    sound discretion of this Court; it cannot be "reserved" by Cemex.  Accordingly, the Court STRIKES

2    Cemex's sixteenth affirmative defense.

3                      **11.        Seventeenth Affirmative Defense**

4            In its seventeenth affirmative defense, Cemex "alleges that Plaintiffs' claims are barred to the

5    extent that Defendant acted in accordance with the applicable law, state and federal regulations, and

6    Federal Motor Carrier Safety Administration regulations in effect during the relevant time periods."

7    (Doc. 28 p. 14).  However, Cemex's defense in its answer provides no notice to Plaintiffs as to which

8    applicable laws and state and federal regulations Cemex allegedly followed or which of Plaintiffs'

9    claims are barred by Cemex's alleged compliance.  *Conley*, 355 U.S. at 47.

10           While Plaintiffs do not clearly establish that no material issues of fact remain, Cemex fails to

11   sufficiently plead its compliance with applicable laws and regulations defense.  *Doleman*, 727 F.2d at

12   1482; Fed. R. Civ. P. 8, 12(f).  Accordingly, the Court STRIKES Cemex's seventeenth affirmative

13   defense.

14                          **Motion for Summary Judgment**

15    **A.    Legal Standard**

16           Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary

17   judgment on all or part of the claim."  "A district court may dispose of a particular claim or defense by

18   summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or

19   defense."  *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

20           Summary judgment is appropriate when there exists no genuine issue as to any material fact

21   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); *Matsushita*

22   *Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.*

23   *Contractors Assn*., 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to "pierce

24   the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita*

25   *Elec.*, 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401,

26   1405 (9th Cir. 1985).

27           The evidence of the party opposing summary judgment is to be believed, and all reasonable

28   inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see, High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see, Adickes v. S. H. Kress & Co*., 398 U.S. 144, 160 (1970). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see, High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also, Robi v.*

*Five Platters*, Inc., 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial."  *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

**B.    Analysis**

Plaintiffs bring seven causes of action under state and federal law against Cemex.

Plaintiffs allege that Cemex unlawfully discriminated against them on the basis of their national origin, Hispanic, in violation of Title VII and FEHA.  Plaintiffs allege that Cemex failed to prevent discrimination and retaliated against them for expressing opposition to Cemex's discriminatory conduct in violation of FEHA.  Plaintiffs further allege that Cemex implemented an unlawful English-only workplace policy in violation of Cal. Gov. Code § 12951, a provision of FEHA.

**1.    Title VII[4]**

In their first and second causes of action, Plaintiffs allege that Cemex discriminated against them on the basis of their national origin, Hispanic.

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C.A. § 2000e-2(a)(1).

Specifically, Plaintiffs allege that Cemex engaged in unlawful discrimination by subjecting them to a hostile work environment and to disparate treatment on the basis of their national origin.

---

[4] Cemex argues that this Court lacks jurisdiction over Plaintiffs' discrimination and harassment claims under Title VII and FEHA because, in their EEOC charges, Plaintiffs failed to name the specific acts and incidents upon which Plaintiffs claim discrimination and harassment in their complaint and because Cervantes listed the dates of discrimination as his telephone conversation with Hamilton.  In Montes' EEOC charge he states that "I believe I was harassed, subjected to an English-Only Rule, and subjected to different terms and conditions of employment because of my national origin (Hispanic)" in violation of Title VII and FEHA and that "I am aware that non-Hispanic drivers are treated better."  (Doc. 27 Exh. 4 p. 1).  In Cervantes' EEOC charge, in addition to alleging the English-only policy, he states that "I believe I was harassed and treated differently because of my national origin (Hispanic)" in violation of Title VII and FEHA.  (Doc. 27 Exh. 1 p. 1).  Both Montes' and Cervantes' EEOC charges state that the conduct at issue were continuing actions.  (Doc. 27 Exhs. 1 and 4).  "[A]n EEOC investigation that could reasonably be expected to grow out of" Plaintiffs' charges would include in its scope the alleged conduct upon which Plaintiffs now claim discrimination and harassment. *Vasquez v. City of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).  Therefore, the Court does not lack jurisdiction over Plaintiffs' claims for national origin discrimination and harassment in violation of Title VII and FEHA.

### i.     Hostile Work Environment

In the second cause of action, Plaintiffs allege that Cemex subjected each of them to a hostile work environment on the basis of their national origin in violation of Title VII.

To establish the *prima facie* hostile work environment claim under Title VII, Plaintiffs must raise a triable issue of fact as to whether (1) they was subjected to verbal or physical conduct because of their national origin, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment.  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotations and citations omitted).  The Supreme Court has instructed that "[w]orkplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).  "Hence, 'a recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Id.* (quoting *Faragher*, 524 U.S. at 788).

### a.     Montes

Starting from around 2010, Stogdell and Light instructed Montes and other drivers to speak only English at work including on the work radio and repeatedly admonished and yelled at Montes when he did not comply.  (Compl. ¶ 11; Doc. 79 p. 22).  Stogdell also had Montes read English out loud at safety meetings and laughed when Montes had trouble with pronunciation.  (Compl. ¶ 18).  Montes further claims that Light on one occasion called him "s--- for brains," and, on another occasion, told Montes to "wash the f-----g truck."  (Montes Dep. 98:7 – 100:5; 101:12-103:13).

The first element of a *prima facie* case of hostile work environment on the basis of national origin requires Plaintiffs to show that they were subjected to verbal or physical conduct *because of their national origin*.  *Manatt*, 339 F.3d at 798 (emphasis added).

Here, the allegations and evidence indicate that Montes was admonished and yelled at

because Montes was speaking a language other than English when his supervisors instructed him and other employees to speak only English at work, including on the work radio.  (Doc. 80 pp. 9-10). There is no evidence to suggest that Montes would have been admonished or yelled at if Montes was speaking English at work, regardless of Montes' national origin.  Likewise, there is also no evidence to suggest that employees of Hispanic descent who did not speak a language other than English at work or on the work radio in compliance with Stogdell and Light's instructions were subject to verbal admonishments or other allegedly harassing conduct.  *See also*, *Garcia v. Spun Steak Co*., 998 F.2d 1480, 1487 (9th Cir. 1993) ("Title VII, however, does not protect the ability of workers to express their cultural heritage at the workplace.  Title VII is concerned only with disparities in the treatment of workers; it does not confer substantive privileges.").

It is undisputed that Stogdell had Montes read out loud in English at safety meetings. However, Montes testified in his deposition that Stogdell had all participants at the safety meetings read out loud.  (Montes Dep. 169:5-171:12).  There is no evidence to indicate that Stogdell targeted or singled out Montes at the safety meetings on the basis of Montes' national origin.  Montes further testified that he never informed Stogdell or any manager at Cemex that he was uncomfortable reading out loud at safety meetings.  *Id*.

Finally, there is no evidence that Light's statements to Montes calling him "s--- for brains" and telling Montes to "wash the f-----g truck" were made on the basis of Montes' national origin.  *See also*, *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80-81 (1998) (finding that Title VII is not a general civility code).

Therefore, there is no evidence to raise a genuine issue of material fact that Montes was subject to verbal or physical conduct because of his national origin.  *Manatt,* 339 F.3d at 798.

### b.   Cervantes

During the course of Cervantes' employment at Cemex, he alleges was instructed by managers and supervisors to speak English only at work including on the work radio.  (Compl. ¶ 13). Specifically, Light, Cervantes' supervisor, told Cervantes to speak "English, goddamnit" on a few occasions throughout Cervantes' employment (Cervantes Dep., 230-234).  Stogdell testified that he instructed Cemex drivers, including Cervantes, on more than one occasion to speak English only on

14

the company radio.  (Stogdell Dep. 159:12-25).

The discussion above as to Montes applies to Cervantes as well – the allegations and evidence indicate that Cervantes was admonished and subjected to the conduct at issue because he was not speaking only English at work and on the work radio.  There is no evidence to suggest that Cervantes would have been admonished or yelled at if Cervantes was speaking English at work, regardless of his national origin.  Likewise, there is also no evidence to suggest that employees of Hispanic descent who did not speak a language other than English at work or on the work radio in compliance with Stogdell and Light's instructions were subject to verbal admonishments or other allegedly harassing conduct.

Therefore, there is no evidence to raise a genuine issue of material fact that Cervantes was subject to verbal or physical conduct because of his national origin.  *Manatt,* 339 F.3d at 798.

Because Plaintiffs fail to raise a genuine issue of material fact as to whether either Montes or Cervantes was subjected to verbal or physical conduct because of his national origin, Cemex's motion for summary adjudication of Plaintiffs' second cause of action for hostile work environment under Title VII is GRANTED.

ii.     **Disparate Treatment Claim**

In the first cause of action, Plaintiffs claim that Cemex subjected them to disparate treatment on the basis of their national origin.  These claims are properly analyzed "under the disparate treatment model, which applies when an individual [has been] singled out and treated less favorably than others similarly situated on account of [race, color, sex, or national origin]."  *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988) (internal quotation and citation omitted).

The Ninth Circuit has adopted the *McDonnell Douglass* burden-shifting framework in evaluating disparate treatment cases:

> In order to prevail in a Title VII disparate treatment case, a plaintiff must first establish a *prima facie* case of discrimination.  The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision.  If the defendant carries its burden, the plaintiff is then afforded an opportunity to demonstrate that the 'assigned reason' was 'a pretext or discriminatory in its application.'

*Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1358-59 (9th Cir. 1985) (quoting *McDonnell Douglas*

15

1  *Corp. v. Green*, 411 U.S. 792, 807 (1973)).  "However, '[t]he ultimate burden of persuading the trier of

2  fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

3  plaintiff.'"  *Pejic*, 840 F.2d at 672 (quoting *Texas Dep't. of Comm. Affairs v. Burdine*, 450 U.S. 248,

4  253, (1981); *Casillas v. United States Navy*, 735 F.2d 338, 342 (9th Cir.1984)).

5     To establish a *prima facie* case in a disparate treatment claim, a plaintiff must show that (1)

6  he belongs to a class of persons protected by Title VII; (2) he performed his job satisfactorily; (3) he

7  suffered an adverse employment action; and (4) his employer treated him differently than a similarly

8  situated employee who does not belong to the same protected class as the plaintiff.  *Cornwell v.*

9  *Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S.

10  at 802).

11          **a.**  **English-Only Policy**

12     Plaintiffs base the bulk of their disparate treatment argument on Cemex's alleged English-

13  only policy.  (Compl. ¶¶ 11, 13-14, 17-18).  Specifically, Plaintiffs argue that Cemex's English-only

14  policy itself constitutes discrimination because Cemex fails to demonstrate that the policy is mandated

15  by a business necessity.  (Doc. 79 pp. 14-19).  This is the long-standing approach of the EEOC and its

16  Guidelines.  *See*, 29 C.F.R. § 1606.7(a) and (b) (1991).  However, the Ninth Circuit has expressly

17  rejected the EEOC's English-only rule Guideline: "We are not aware of, nor has counsel shown us,

18  anything in the legislative history to Title VII that indicates that English-only policies are to be

19  presumed discriminatory.  Indeed, nowhere in the legislative history is there a discussion of English-

20  only policies at all."  *Garcia*, 998 F.2d at 1490.  Instead, "the Supreme Court has held that a plaintiff in

21  a disparate impact case must prove the alleged discriminatory effect before the burden shifts to the

22  employer."  *Id.*

23     Applying that reasoning here, Plaintiffs claiming disparate treatment must first show the

24  alleged unequal treatment before the burden shifts to Cemex.  Neither Montes nor Cervantes puts forth

25  evidence to show that non-Hispanic employees were any less bound by the English-only policy than

26  employees of Hispanic descent.  There is no evidence that Hispanic employees were singled out and

27  subjected to adverse employment decisions for violating the English-only policy while non-Hispanic

28  employees were not.  For example, Stogdell testified that he began instructing employees to speak only

English on the company radio after a Swedish employee informed Stogdell that other employees speaking Spanish over the company radio made the Swedish employee feel discriminated against and that it was a safety concern with regard to job site conditions because the Swedish employee did not understand Spanish.  (Stogdell Dep. 160:18-162:5).  There is no evidence that the Swedish employee or any other non-Hispanic employee spoke a language other than English over the company radio or that such employee was not admonished while Plaintiffs were admonished.  Moreover, both Montes and Cervantes testified that they have never received corrective action, discipline, or been subject to any adverse employment action for speaking Spanish at work or on the work radio.  (Montes Dep. 46:5-47:16, 123:22-124:7; Cervantes Dep. 155:8-156:6, 207:4-9).  *See also*, *Lewis v. United Parcel Serv., Inc.*, 252 F. App'x 806, 808 (9th Cir. 2007) (holding that threat of termination that was never carried out does not constitute adverse employment action); *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir.1998) (finding that "[m]ere threats and harsh words are insufficient" to establish an adverse employment action).

Therefore, Plaintiffs fail to make out a *prima facie* case of discrimination on the basis of Cemex's alleged English-only policy.

### b.    Other Conditions of Employments

Plaintiffs also claim that they were subjected to disparate treatment on the basis of their national origin because they were unfairly disciplined, were drug tested more frequently than non-Latino/Caucasian drivers, were paid less than non-Latino/Caucasian drivers, and were not allowed to use the batch office restroom and facilities while non-Latino/Caucasian employees were allowed to use them.  (Compl. ¶¶ 8-19; Doc. 79 pp. 20-21).

First, while the other conditions of employment arguably may be considered adverse employment actions under the Ninth Circuit's expansive approach, there is no support and Plaintiffs point to no authorities for their contention that being administered drug tests after having accidents involving company equipment in compliance with Department of Transportation ("DOT") regulations and with company policy of which Plaintiffs were aware constitutes adverse employment action. (Dayley Dec. ¶ 5; Cervantes Dep. 61:21-65:24; Montes Dep. 37:6-38:4).  *See*, *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Neither Plaintiff alleges or provides evidence that they were ever

subject to a drug test other than after having an accident involving company equipment.

Even assuming without deciding that Plaintiffs could put forth a *prima facie* case of disparate treatment as to the remaining alleged conditions of employment, Cemex provides legitimate nondiscriminatory reasons for the alleged adverse employment decisions.  *McDonnell Douglas*, 411 U.S. at 807.

In Montes' deposition, he admits to the conduct for which he received each corrective action.  (Montes Dep. 73-78, 137-145).  Likewise, Cervantes in his deposition admits to the conduct for which he received each corrective action.  (Cervantes Dep. 101-14, 139-43, 151-55).  There is no evidence that either Montes or Cervantes ever received a corrective action for conduct that he did not commit.  In addition, Cemex presents evidence that non-Hispanic/Caucasian drivers received corrective action for the same types of conduct.  (Dayley Dec. and Exhs. B-D).

Plaintiffs present evidence that Montes was paid a lower starting salary than two non-Hispanic/Caucasian drivers.  (Montes Dep. 164-65; McCright Dep. 27-28).  However, Cemex presents evidence that Montes' starting hourly wage in 2008 was lower than the Caucasian employees' starting hourly wages in 2012 because Cemex's hourly wage for all of its drivers increased in the four-year interim, and that Montes and Caucasian drivers each received a starting hourly wage of 80% of the then-current maximum hourly wage for drivers.  (Dayley Dec. ¶¶ 14-15; Montes Dep. 163-168).  Moreover, Cemex presents evidence that Cemex pays its fully qualified drivers the same hourly rate regardless of seniority, and that Cemex periodically increases that hourly rate over time to remain competitive.  (Dayley Dec. ¶ 13).  At some time between 2008 and 2012, Cemex increased its hourly rate for fully qualified drivers to $21.40 from $20.60 – according to Plaintiffs' deposition testimony, both Montes and Cervantes began receiving the increased hourly rate of $21.40 in 2011, and there is no evidence that non-Hispanic drivers received the increased rate before Plaintiffs.  (Montes Dep. 4:1-9; Cervantes Dep. 27:12-16).

Plaintiffs also present evidence that Cervantes stopped being assigned training responsibilities, which paid an extra $5 per hour, for new drivers in or around 2012, and that those responsibilities were eventually given to a later-hired non-Hispanic/Caucasian driver.  (Cervantes Dep. 147-52).  However, the evidence shows that the training responsibilities were transferred from

Cervantes to another Hispanic driver with more experience than Cervantes.  (Cervantes Dep. 149:14-18).  Further, Stogdell testified that he then gave the training responsibilities to the later-hired non-Hispanic/Caucasian driver because that driver had eight or nine years of experience as a mixer driver and working on plant repairs and with plant staff prior to working for Cemex.  (Stogdell Dep. 229:8-20).

Finally, the parties do not dispute that Plaintiffs were not allowed to use the restroom at the batch office in in Delano and could only use the drivers' restroom.  However, Cemex presents evidence that, because the Delano batch office was small, the rule was that only batch office personnel could use the batch office restroom and facilities, and the drivers were to use the separate drivers' restroom.  (Montes Dep. 97:6-11; Cervantes Dep. 41:1-15; Stogdell Dep. 235:11-18).  Cervantes also testified that an employee of Hispanic descent who worked in the batch office was allowed to use the batch office facilities.  (Cervantes Dep. 41:16-19).

While Cemex met its burden to provide legitimate non-discriminatory reasons for the alleged adverse employment actions, Plaintiffs provide no evidence that the reasons Cemex puts forth are mere pretext.  *McDonnell Douglas*, 411 U.S. at 807.  Therefore, Plaintiffs fail to raise a genuine issue of material fact that they were subject to disparate treatment on the basis of their national origin in violation of Title VII.  Accordingly, Cemex's motion for summary adjudication as to Plaintiffs' first cause of action for disparate treatment in violation of Title VII is GRANTED.

**2.   FEHA**

**i.       Harassment**

In their fourth cause of action, Plaintiffs claim that Cemex engaged in national origin harassment against them in violation of FEHA.  (Compl. ¶¶44-49).

Under FEHA, it is an unlawful employment practice for an employer, because of the national origin of any person to discriminate against the person in compensation or in terms, conditions, or privileges of employment.  Cal. Gov. Code § 12940(a).

The California Supreme Court has observed that, while the wording of Title VII and the FEHA differs in some particulars, both statutory schemes regard the prohibition against harassment as part and parcel of the proscription against discrimination, and "'the antidiscriminatory objectives and

overriding public policy purposes of the two acts are identical.'" *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 278 (2006) (quoting *Beyda v. City of Los Angeles*, 65 Cal.App.4th 511, 517, (Cal. Ct. App. 1998)). "In light of these similarities, California courts frequently seek guidance from Title VII decisions when interpreting the FEHA and its prohibitions against [] harassment." *Id.* (citing *Miller v. Department of Corrections*, 36 Cal.4th 446, 463 (2005)). The California Supreme Court also has adopted the Title VII test for a *prima facie* case of harassment in adjudicating harassment claims under FEHA. *Id.* at 297. Therefore, the analysis above of Plaintiffs' Title VII national origin harassment claim applies to Plaintiffs' FEHA national origin claim as well. For the same reasons that Plaintiffs' Title VII claim fails to raise a genuine issue of material fact that they were subject to a hostile work environment under Title VII, Plaintiffs also fail to raise a genuine issue of material fact that they were subject to a hostile work environment under FEHA. *Id.*; *see also*, *Maldonado v. Town & Cnty. Manor*, No. G040167, 2009 WL 1816881, at *7 (Cal. Ct. App. June 25, 2009) ("The allegations here are that Town & Country imposed an English-only requirement on all individuals who worked on its premises. While such a requirement might be discrimination, it is not harassment.").

Accordingly, Cemex's motion for summary adjudication as to Plaintiffs' fourth cause of action for national origin harassment in violation of FEHA is GRANTED.

### ii.      Unlawful English-Only Policy in Violation of FEHA § 12951

In their seventh cause of action, Plaintiffs allege that Cemex enforced an unlawful English-only policy in the workplace in violation of FEHA § 12951. (Compl. ¶¶ 62-66).

Section 12951 provides:

> It is an unlawful employment practice for an employer, as defined in subdivision (d) of Section 12926, to adopt or enforce a policy that limits or prohibits the use of any language in the workplace, unless both of the following conditions exist:
> (1) The language requirement is justified by a business necessity.
> (2) The employer has notified its employees of the circumstances and the time when the language restriction is required to be observed and of the consequences for violating the language restriction.

Cal. Gov. Code § 12951.

Plaintiffs brought this action in this Court on the basis of their first and second causes of action under Title VII, pursuant to 28 US.C. § 1343(a)(4), which gives district courts original

20

jurisdiction "of any civil action authorized by law to be commenced by any person to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." (Compl. ¶ 1). Cemex in its answer admitted that this Court has federal question jurisdiction over Plaintiffs' Title VII claims and supplemental jurisdiction over Plaintiffs' state law claims. (Doc. 28 p. 1).

Under 28 U.S.C. § 1367(c)(1) and (3), a district court may decline to exercise supplemental jurisdiction over a claim where the claim raises a novel or complex issue of state law or where the district court has dismissed all claims over which it has original jurisdiction. Both of these conditions are met here. This Court grants Cemex's motion for summary adjudication as to both of Plaintiffs' Title VII claims. In addition, when an employer is deemed to have adopted or enforced a policy that restricts or prohibits the use of any language in the workplace and when such a language requirement is justified by a business necessity within the meaning of FEHA § 12951, both which are squarely at issue here, are novel issues of California law.[5]

Accordingly, this Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' seventh cause of action and DISMISSES it without prejudice. 28 U.S.C. § 1367(c)(1) and (3).

### iii.    Discrimination

In their third cause of action, Plaintiffs allege that Cemex subjected them to discrimination on the basis of their national origin in violation of FEHA. (Compl. ¶¶ 38-43).

While California courts have historically looked to Title VII law for guidance on interpreting FEHA, the Ninth Circuit has noted that, "[t]he tendency of California courts to look to Title VII law for guidance does not end our inquiry, however, because the California Supreme Court has also observed that it is neither bound nor limited by federal law when interpreting FEHA." *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1173 (9th Cir. 2001). In addition, the California Supreme Court has made clear that, "[o]nly when FEHA provisions are similar to those in Title VII do we look to the federal courts' interpretation of Title VII as an aid in construing the FEHA." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 74 (2000) (citing *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 498

---

[5] To date, there appears to be only one unpublished California Court of Appeal opinion that squarely addresses these issues. *See*, *Buenviaje v. Pac. Bell Directory*, No. G043321, 2011 WL 1085113 (Cal. Ct. App. Mar. 24, 2011).

(1996)).  Here, § 12951's provision on restrictive language policies in the workplace is unique to FEHA – there is no analogous provision in Title VII.  Cal. Gov. Code § 12951.  Indeed, as discussed above, the legislative history of Title VII includes no discussion at all of English-only policies. *Garcia*, 998 F.2d at 1490.

Because the novel state law issue of whether Cemex adopted or enforced an unlawful English-only policy in violation of FEHA § 12951 necessarily affects the state law issue of whether Cemex discriminated against Plaintiffs on the basis of their national origin in violation of FEHA § 12940, this Court likewise declines to exercise supplemental jurisdiction over Plaintiffs' third cause of action.  Accordingly, this Court DECLINES to exercise supplemental jurisdiction over and DIMISSES without prejudice Plaintiffs' third cause of action.

### iv.        Retaliation

In their fifth cause of action, Plaintiffs allege that Cemex unlawfully retaliated against them in violation of FEHA § 12940(h).  (Compl. ¶¶ 50-55).

Like Title VII discrimination claims, "claims for Title VII retaliation are subject to the *McDonnell Douglas* burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury."  *Gaub v. Prof'l Hosp. Supply, Inc*., 845 F. Supp. 2d 1118, 1129 (D. Idaho 2012) (citing *Steiner v. Showboat Operating Co*., 25 F.3d 1459, 1464–65 (9th Cir. 1994)).

"To make out a *prima facie* case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner*, 25 F.3d at 1464).

The parties do not dispute that the EEOC and DFEH charges of discrimination Plaintiffs filed constitute protected activity.  Cervantes' complaint about the English-only policy that led to the telephone call with Hamilton also arguably constitutes protected activity.  *See*, *id*. at n. 3 (finding that making an informal complaint to a supervisor is a protected activity) (internal citation omitted). Plaintiffs cite the same alleged adverse employment actions as in their Title VII disparate treatment claims.  As discussed above, some of the alleged conditions of employment may constitute adverse

1  employment actions.  *See*, *supra*.

2         Cemex argues persuasively that Plaintiffs fail to show a causal connection between the

3  protected activity and the adverse action.  Moreover, even if Plaintiffs set forth a *prima facie* case of

4  retaliation, Cemex, as discussed in the Title VII disparate treatment analysis, advances legitimate, non-

5  retaliatory, and non-discriminatory reasons for any adverse actions taken against Plaintiffs.  *See*, *supra*;

6  *Steiner*, 25 F.3d at 1465 (citing *Miller v. Fairchild Industries, Inc*., 797 F.2d 727, 730-31 (9th Cir.

7  1986)).  The Court's analysis of Cemex's proffered reasons above applies equally here.  Likewise,

8  Plaintiffs provide no evidence that Cemex's legitimate, non-retaliatory reasons were pretextual.  *Id*.

9         Accordingly, because Plaintiffs fail to raise a genuine issue of material fact to show that

10  Cemex retaliated against them in violation of FEHA § 12940(h), Cemex's motion for summary

11  adjudication as to Plaintiffs' fifth cause of action is GRANTED.

12              **v.     Failure to Prevent Discrimination and Retaliation**

13         Finally, in their sixth cause of action, Plaintiffs claim that Cemex failed to prevent

14  discrimination and retaliation from occurring in violation of FEHA § 12940(k).  (Compl. ¶¶ 56-61).

15         Because this Court grants Cemex's motion for summary adjudication as to Plaintiffs' fifth

16  cause of action for retaliation, Plaintiffs as a matter of law cannot show that Cemex failed to prevent

17  retaliation in violation of § 12940(k).  Accordingly, this Court GRANTS Cemex's motion for summary

18  adjudication as to Plaintiffs' claim for failure to prevent retaliation.

19         Just as the novel state law issue of whether Cemex adopted or enforced an unlawful English-

20  only policy in violation of FEHA § 12951 necessarily affects the state law issue of whether Cemex

21  discriminated against Plaintiffs in violation of FEHA § 12940(a), it also necessarily affects the state

22  law issue of whether Cemex failed to prevent discrimination in violation of FEHA § 12940(k).  *See*,

23  *supra*.  Therefore, this Court DECLINES to exercise supplemental jurisdiction over and DISMISSES

24  without prejudice Plaintiffs' sixth cause of action for failure to prevent discrimination in violation of

25  FEHA § 12940(k).  *See*, 28 U.S.C. § 1367(a)(1) and (3).

26

27

28

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court:

1.  GRANTS Plaintiffs Jose Cervantes and Jorge Montes' request to strike Defendant Cemex Inc.'s eighth, ninth, eleventh, fourteenth, fifteenth, sixteenth, and seventeenth affirmative defenses in Cemex's first amended answer;

2.  DENIES Plaintiffs' motion for judgment on the pleadings as to Cemex's third, sixth, seventh, and tenth affirmative defenses;

3.  GRANTS Cemex's motion for summary adjudication as to Plaintiffs' first cause of action for discrimination in violation of Title VII, second cause of action for harassment in violation of Title VII, fourth cause of action for harassment in violation of FEHA, fifth cause of action for retaliation in violation of FEHA, and sixth cause of action as to failure to prevent retaliation in violation of FEHA;

4.  DECLINES to exercise supplemental jurisdiction over and DISMISSES without prejudice Plaintiffs' third cause of action for discrimination under FEHA, sixth cause of action as to failure to prevent discrimination in violation of FEHA, and seventh cause of action for unlawful language policy in violation of FEHA, and

5.  ORDERS the Clerk of Court to close this case.

If Plaintiffs wish to re-file claims against Defendant for their third cause of action for discrimination under FEHA, sixth cause of action as to failure to prevent discrimination in violation of FEHA, and seventh cause of action for unlawful language policy in violation of FEHA, Plaintiffs must bring such claims **in state court**.


IT IS SO ORDERED.

Dated:   **November 13, 2014**          **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE